ELECTRONICALLY FILED
2013-Jan-14  15:21:23
60CV-13-230

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
_____ DIVISION

Cindy Clough, as Personal Representative of the Estate
of Joyce Lee Vinson, deceased, and on behalf of the
wrongful death beneficiaries of Joyce Lee Vinson          PLAINTIFF

vs.          No. _____

Capital SeniorCare Ventures, LLC; Column Guaranteed LLC;
SLC Properties, LLC; SLC Property Holdings, LLC; EOR-ARK,
LLC; VAJ LLC; SLC Operations Master Tenant, LLC; SLC
Operations Holdings, LLC; Senior Living Communities of
Arkansas, LLC; SLC Professionals, LLC f/k/a SLC Professionals
of Arkansas, LLC; SLC Professionals Holdings, LLC; Senior
Vantage Point, LLC; ADDIT, LLC; Quality Review, LLC;
John W. Dwyer; Capital Funding Group, Inc.; Capital
Funding, LLC d/b/a Capital Funding Group; CSCV Holdings, LLC;
Arkansas SNF Operations Acquisition, LLC; Arkansas Nursing
Home Acquisition, LLC; Capital Finance, LLC; Premier Health
and Rehabilitation, LLC; North Little Rock Holdings, LLC;
Steve Hudgens, in his capacity as Administrator of Premier
Health and Rehabilitation, LLC; and John Doe 1 through 5,
Unknown Defendants          DEFENDANTS

## **COMPLAINT**

1.     Defendant Capital SeniorCare Ventures, LLC is a Delaware limited liability

company that was organized on October 18, 2006, as a subsidiary of Capital Funding

Group, Inc.   Effective July 1, 2009, Defendant Capital SeniorCare Ventures, LLC

purchased from Beverly Enterprises-Arkansas, Inc. and affiliates of Beverly Enterprises-

Arkansas, Inc., the real property and certain tangible and intangible personal property

for 12 skilled nursing facilities pursuant to an Agreement for Sale of Nursing Home

Properties dated September 22, 2008, as later amended and restated.  Included among

the 12 nursing facilities in the sale was the facility located at 3600 Richards Road, North

Little Rock, Arkansas, then known as Golden LivingCenter – North Little Rock.   In

conjunction with the sale to Capital SeniorCare Ventures, LLC, the individual operating affiliates of Beverly Enterprises-Arkansas, Inc. entered into separate Operations Transfer Agreements for the transfer of the operating contracts and ongoing operations of the 12 facilities. Capital SeniorCare Ventures obtained HUD financing in the original principal amount of $61,021,300.00 for the purchase of the facilities. It then, through 12 single purpose entities, collectively leased the facility properties to SLC Properties, LLC, a Delaware limited liability company, pursuant to a Master Lease and Security Agreement, with an initial annual minimum rent of $7,000,000. CSCV Arkansas Realty, LLC, a subsidiary of Capital Funding Group and the sole member of each of the 12 single purpose landlord entities, signed the Master Lease and Security Agreement on the Landlord's behalf. The agent for service of process for Defendant Capital SeniorCare Ventures, LLC is HIQ Corporate Services, Inc., 3500 South Dupont Highway, Dover, Delaware 19901.

2.    Defendant Column Guaranteed LLC is a Delaware limited liability company that provided the HUD financing for Capital SeniorCare Ventures, LLC's purchase of the Beverly Enterprises-Arkansas, Inc. facilities, including the facility located at 3600 Richards Road, North Little Rock, Arkansas, then known as Golden Living Center – North Little Rock. Defendant Column Guaranteed, LLC is defined as the "Senior Lender" under the Master Lease and Security Agreement. Pursuant to the Master Lease and Security Agreement, Column Guaranteed LLC exercised consistent oversight of the acquired facilities in the form of weekly and monthly reporting and monitoring of documents such as financial reports, budgets, licenses, surveys, inspections, and notices of violations of state, federal, and local regulations. The agent

2

for service of process on Defendant Column Guaranteed LLC is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware  19808.

3.     Defendant SLC Properties, LLC, Tenant under the Master Lease and Security Agreement, is a Delaware limited liability company that was organized on October 20, 2008.  During all relevant times hereto, Jerry Kemper served as the sole Manager of Defendant SLC Properties, LLC.  Defendant SLC Properties, LLC is wholly owned by Defendant SLC Property Holdings, LLC, a Delaware limited liability company also organized on October 20, 2008.  100% of the membership interests in Defendant SLC Property Holdings, LLC was owned by SLC Property Investors, LLC, a Delaware limited liability company organized on October 20, 2008.  Until September 1, 2011, SLC Property Investors, LLC, was jointly owned by Defendants EOR-ARK, LLC, a Delaware limited liability company organized on October 14, 2008, and VAJ LLC, an Indiana limited liability company organized on December 3, 2008.  Effective September 1, 2011, all of the membership interest in SLC Property Investors, LLC was transferred to Arkansas SNF Operations Acquisitions, LLC, a Delaware limited liability company.  The agent for service of process for SLC Properties, LLC is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  The agent for service of process for Defendant SLC Property Holdings, LLC is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

4.     From July 1, 2009 until August 31, 2011, several layers of intertwined, wholly-owned entities operating under the common name of "SLC," or Senior Living Communities, leased and/or operated the long term care facilities Capital SeniorCare Ventures, LLC acquired from Beverly Enterprises-Arkansas, Inc., including the facility

3

located at 3600 Richards Road, North Little Rock, Arkansas, formerly known as Golden LivingCenter – North Little Rock, and changed effective July 1, 2009 to Premier Health and Rehabilitation, LLC.  Defendant EOR-Ark, LLC and Defendant VAJ LLC constituted the top tier of the layers of SLC entities, ultimately owning and controlling each facility. 100% of the membership interests of Defendant EOR-Ark, LLC are owned by William and Pamela Smith. 100% of the membership interests of VAJ LLC are owned by Jerry Kemper.  Defendant EOR-ARK, LLC may be served by or through its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.   Defendant VAJ LLC may be served by or through its registered agent, Corporation Service Company, 251 East Ohio Street, Suite 500, Indianapolis, Indiana 46204.

5.     On July 1, 2009, Defendant SLC Properties, LLC, as Sublandlord, subleased the property for the 12 SLC-operated facilities, including the facility located at 3600 Richards Road, North Little Rock, Arkansas, to Defendant SLC Operations Master Tenant, LLC, a Delaware limited liability company, as Subtenant, pursuant to a Master Sublease Agreement dated June 30, 2009.

6.     That same date, Defendant SLC Operations Master Tenant, LLC subleased the 12 properties to the 12 operator holding companies which held the licenses to operate the long term care facilities pursuant to separate Sub-Sublease Agreements by and between Defendant SLC Operations Master Tenant, LLC, as Sublandlord, and the individual operator holding companies, as Subtenants.  In this case, the relevant operator holding company was Defendant Premier Health and Rehabilitation, LLC.   Until September 1, 2011, Jerry Kemper was the sole Manager of

4

Defendant SLC Operations Master Tenant, LLC and was also the sole Manager of the 12 Subtenants.  The agent for service of process for Defendant SLC Operations Master Tenant, LLC is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7.     Until September 1, 2011, Defendant SLC Operations Holdings, LLC, a Delaware limited liability company, owned 100% of the membership interests in Defendant SLC Operations Master Tenant, LLC.  Defendant Senior Living Communities of Arkansas, LLC, a Delaware limited liability company, which is not currently in good standing to do business in the State of Arkansas, but did business in Arkansas during the relevant time periods, owns 100% of the limited liability company membership interests in Defendant SLC Operations Holdings, LLC. The agent for service of process for Defendant SLC Operations Holdings, LLC is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  Defendant Senior Living Communities of Arkansas, LLC's registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

8.     At all times relevant hereto, Defendant SLC Professionals Holdings, LLC, a Delaware limited liability company, owned 100% of the limited liability company membership interests in Defendant SLC Professionals of Arkansas, LLC, n/k/a SLC Professionals, LLC.  Until September 1, 2011, Defendant SLC Professionals Holdings, LLC was owned 90% by EOR-Ark, LLC and 10% by VAJ LLC. On September 1, 2011, 100% of the membership interest in SLC Professionals Holdings, LLC was acquired by Arkansas SNF Operations Acquisition, LLC pursuant to a Membership Interests Purchase Agreement. The agent for service of process for Defendant SLC

5

Professionals Holdings, LLC is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

9.     Defendant SLC Professionals, LLC, formerly known as SLC Professionals of Arkansas, LLC, is an Arkansas limited liability company that was organized on December 11, 2008. On July 1, 2009, Defendant SLC Professionals of Arkansas, LLC entered into individual Professional Service Agreements with the SLC-operated facilities, including Premier Health and Rehabilitation, LLC, to provide certain specialized health care and consulting services at the facilities, including operations, quality assurance, dietary services, reimbursement, business office services, marketing and business development, and physical plant maintenance. Pursuant to the 2009 Professional Service Agreements, the facilities provided healthcare information to Defendant SLC Professionals of Arkansas, LLC, including factors critical to the well-being of residents such as skin audits, weight loss and other quality of care indicators. In consideration for the consultant services, the facilities paid a consultant fee to Defendant SLC Professionals of Arkansas, LLC.  The initial fee for this service paid by Defendant Premier Health and Rehabilitation, LLC, for example, was $11,750.00 per month. The initial term of the 2009 Professional Service Agreement was 5 years.

10.     On January 1, 2011, Defendant SLC Professionals of Arkansas, LLC entered into new, individual Professional Service Agreements with the SLC-operated facilities to provide certain specialized health care and consulting services at the facilities, including operations, quality assurance, dietary services, reimbursement, business office services, marketing and business development, and physical plant maintenance.  Pursuant to the 2011 Professional Service Agreements, the facilities

6

provided healthcare information to Defendant SLC Professionals of Arkansas, LLC, including factors critical to the well-being of residents such as skin audits, weight loss and other quality of care indicators.  In consideration for the consultant services, the facilities paid a consultant fee to Defendant SLC Professionals of Arkansas, LLC.  The initial fee paid by Defendant Premier Health and Rehabilitation, LLC, pursuant to the 2011 Professional Services Agreement was $15,468.00 per month.  The initial term of the 2011 Professional Service Agreement was one year.

11.    As the President of Defendant SLC Professionals of Arkansas, LLC, David Merrell ("Merrell") oversaw the operations and reviewed the budgets for the long-term care facilities in Arkansas.  David Merrell has previously testified that his job duties included helping the facilities "accomplish what they needed to do day to day to run their buildings."  During times relevant hereto, Defendant SLC Professionals of Arkansas, LLC hired and employed two Regional Vice Presidents, who were responsible for hiring and supervising Directors of Nursing ("DONs") and Administrators to manage each of the SLC facilities, including Premier Health and Rehabilitation, LLC.  During times relevant hereto, the Regional Vice Presidents assisted the DONs and Administrators with education and training of staff at the facilities and were present at the facilities on a weekly basis.  They held weekly conference calls with the administrators of the facilities and tracked spending at the facilities online, checking in with the administrator when numbers looked out of line.    They also spoke with family members in situations where the family was not satisfied with the Administrator's resolution of issues with care or treatment.

7

12.    During times relevant hereto, Merrell was the supervisor of the Regional Vice Presidents and spoke with them on a daily basis about various operational issues. David Merrell also participated in the hiring of DONs and Administrators for each facility. Merrell met with the Administrators at each facility and trained them as to their duties. During times relevant hereto, Defendant SLC Professionals of Arkansas, LLC charged the facility Administrators with the duty of monitoring the operating budgets they were given and staying within that budget.  Merrell hired the consulting staff and other staff to facilitate Defendant SLC Professionals of Arkansas, LLC's involvement in operation of the facilities.  During times relevant hereto, staff at Defendant SLC Professionals of Arkansas, LLC included four quality assurance ("QA") nurses, who were hired to ensure all policies and procedures, as well as state and federal guidelines for operation and care and treatment of residents, were implemented.  Defendant SLC Professionals of Arkansas, LLC's QA nurses also were charged with making sure the DONs were properly trained.   In their responsibility to oversee and ensure quality of care of residents, the QA nurses conducted internal inspections, toured the facilities, and reviewed charts and state surveys. The QA nurses reported to the Administrator and DON if they found any areas that needed to be addressed at a facility.  They also reported to the Regional Vice Presidents.

13.    During times relevant hereto, David Merrell reviewed the state surveys, citing deficiencies in care at the facility, regarding any specific or recurring problems at a facility.  The Regional Vice Presidents, who were notified when surveys were in progress and were consulted by the facility regarding the plan of correction that resulted, would give David Merrell notice of the surveys, depending on the severity of

8

the deficiencies in care cited by the State.  Mr. Merrell would involve the QA nurses in the plans of correction for the facility, which were mandatory to bring a facility cited for deficiencies into compliance with the law.

14.      Defendant SLC Professionals, LLC f/k/a SLC Professionals of Arkansas, LLC continues to provide consulting services to the facilities formerly operated by SLC. However, the membership interests of Defendant SLC Professionals Holdings, LLC were sold to Defendant Arkansas SNF Operations Acquisition, LLC on September 1, 2011, pursuant to a Membership Interests Purchase Agreement, at which point the name of SLC Professionals of Arkansas, LLC was changed to SLC Professionals, LLC. David Merrill is no longer the President of Defendant SLC Professionals of Arkansas, LLC.   Daniel S. Baird and Brian K. Reynolds are currently the two managers of Defendant SLC Professionals, LLC.    The agent for service of process for Defendant SLC Professionals, LLC f/k/a SLC Professionals of Arkansas, LLC is HIQ Corporate Services, Inc., 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201.

15.      Defendant Senior Vantage Point, LLC is an Indiana limited liability company organized on September 18, 2008.  On July 1, 2009, Defendant Senior Vantage Point, LLC entered into identical Executive Service Agreements with each of the SLC facilities, including Premier Health and Rehabilitation, LLC.  Jerry Kemper signed each of the agreements on behalf of both Defendant Senior Vantage Point, LLC and the facilities.

16.      The Executive Service Agreements required Defendant Senior Vantage Point, LLC to provide human resources, purchasing and other business support services to the facilities.   In addition, Defendant Senior Vantage Point, LLC was

9

obligated to advise the facilities on insurance risk management matters, process insurance claims, and assist in the administration of the facilities' company compliance program. Under the same agreements, the facilities were obligated to timely provide all information and supporting services reasonably required by Defendant Senior Vantage Point, LLC to perform its duties. In consideration for these consultant services, the facilities paid a consultant fee to Defendant Senior Vantage Point, LLC. The initial fee for this service paid by Defendant Premier Health and Rehabilitation, LLC was $11,510.00 per month. The initial term of the Executive Service Agreements was five years.

17.     Cost reports filed with the Arkansas Office of Long Term Care reflect that the majority ownership interest in Senior Vantage Point, LLC was controlled by Jerry Kemper, who also served as its initial Chief Financial Officer, and William Smith. Cost reports filed with the Arkansas Office of Long Term Care further designate Senior Vantage Point, LLC as the "home office" of Premier Health and Rehabilitation, LLC during the relevant period.

18.     Defendant Senior Vantage Point, LLC had access to and shared the same computer system set up for operation of all of the SLC facilities. This system was used by Defendant SLC Professionals of Arkansas, LLC for tracking patient census data and other information vital to operating the facilities. According to Chief Financial Officer Jerry Kemper, Defendant Senior Vantage Point, LLC provided general oversight to the entire organization of affiliated companies owned by Jerry Kemper and William Smith during the relevant period. In 2010, the operations of Defendant Senior Vantage Point, LLC were taken over by ADDIT, LLC. Senior Vantage Point, LLC remains an active

limited liability company in Indiana, the state of its organization.  The agent for service of process for Defendant Senior Vantage Point, LLC is Corporation Service Company, 251 East Ohio Street, Suite 500, Indianapolis, Indiana 46204.

19.     Defendant ADDIT, LLC is an Indiana limited liability company that was organized on August 14, 2008.  Its principal office is located at 9785 Crosspoint Boulevard, Suite 110, Indianapolis, Indiana.  At the time of its formation, Defendant ADDIT, LLC was 100% owned by William Smith.  Defendant ADDIT, LLC originally provided only financial services and back office support to long term care facilities.  In 2010, Defendant Senior Vantage Point, LLC's operations merged with and into Defendant ADDIT, LLC.  Following the 2010 merger, the services that Defendant Senior Vantage Point, LLC had provided to the SLC facilities, including Premier Health and Rehabilitation, LLC, were provided by Defendant ADDIT, LLC.   Upon the Senior Vantage Point, LLC and ADDIT, LLC merger, Jerry Kemper became employed with Defendant ADDIT, LLC as the general Manager and performed the same function for the facilities that he performed on behalf of Defendant Senior Vantage Point, LLC.

20.     On January 1, 2011, ADDIT, LLC entered into an Accounting and Support Services Agreement with each of the SLC facilities, including Premier Health and Rehabilitation, LLC, whereby ADDIT, LLC agreed to provide certain information systems, accounting, bookkeeping, and support services for the facilities.  In addition, ADDIT, LLC agreed to provide human resources, insurance risk management, and company compliance program services to the facilities.   The initial term of the Accounting and Support Services Agreement was to be 5 years.  Pursuant to the 2011 Accounting and Support Services Agreement with Premier Health and Rehabilitation,

LLC, Premier Health and Rehabilitation, LLC was to pay ADDIT, LLC a monthly consulting fee in the amount of $14,554.00.   The agent for service of process for Defendant ADDIT, LLC is HIQ Corporate Services, Inc., 5217 Palisade Court, First Floor, Indianapolis, Indiana 46237.

21.     Defendant Quality Review, LLC is an Indiana limited liability company that was organized on October 30, 2009.  At the time of its formation, Defendant Quality Review, LLC was 100% owned by William Smith.   According to William Smith, Defendant Quality Review, LLC was created to oversee the clinical side of the facilities' operations.  On January 1, 2010, Defendant Quality Review, LLC entered into a Quality Assurance Consultant Agreement with each of the SLC-operated facilities, including Premier Health and Rehabilitation, LLC, whereby it agreed to provide "quality assurance consultation" to each facility.  As a result, Defendant Quality Review, LLC took over the nurse consulting services Defendant SLC Professionals of Arkansas, LLC previously provided to the facilities.   The four quality assurance nurses originally employed by Defendant SLC Professionals of Arkansas, LLC became employed by Defendant Quality Review, LLC.  In addition, Defendant Quality Review, LLC created the policies and procedures for nursing and caretaking at the SLC facilities in Arkansas, including Premier Health and Rehabilitation, LLC.

22.     Pursuant to the Quality Assurance Consultant Agreement, it was the job of the Defendant Quality Review nurse consultants to oversee the nursing practice at the facilities and to make sure the facilities consistently applied the federal and state guidelines. During times relevant hereto, Defendant Quality Review's nurse consultants also performed nursing audits of the facilities, including Premier Health and

12

Rehabilitation, LLC, to make sure all the guidelines were being followed. During times relevant hereto, the President of Defendant Quality Review traveled to the facilities often, and she reported directly to Jerry Kemper.

23.     During times relevant hereto, William Smith, the sole owner of Defendant Quality Review, LLC, personally visited the facilities twice a month. In addition, he held monthly meetings with the administrators and directors of nursing of the facilities to cover such items as new policies and procedures, financials, marketing, census, and survey issues. He also met with the administrators in person, by phone, and he corresponded with them by email, on such matters as census and financial statements.

24.     Through Defendant Quality Review, LLC's oversight and control, during times relevant hereto, William Smith requested and received facility census, budgeting and marketing information on a daily basis. During times relevant hereto, William Smith was involved in assisting facilities cited for deficient care by the State of Arkansas with getting back into compliance. Further, William Smith has acknowledged that he was the one with the authority to direct the facilities to stop accepting new admissions if Medicare and Medicaid stopped paying for new admissions based on bad surveys. The agent for service of process for Defendant Quality Review, LLC is Corporation Service Company, 251 East Ohio Street, Suite 500, Indianapolis, Indiana 46204.

25.     In the spring of 2011, William Smith and Jerry Kemper began a discussion with Capital Funding Group, who owned the physical properties of 12 of the 16 long term care facilities that the SLC group leased and operated in Arkansas, to turn the leases back from the SLC group to Capital Funding Group. At the initial meeting to discuss the transfer of the leases, William Smith, Jerry Kemper, and David Merrill were

13

present on behalf of the SLC group. Defendant John W. Dwyer and Brian Reynolds were the primary principals present on behalf of Capital Funding Group. Daniel Baird of the Capital Funding Group was also present. Alan Zucarri, of Hamilton Insurance Agency, and a partner of Defendant Dwyer in the transfer from SLC to Arkansas SNF Operations Acquisition, LLC, was also present.

26.     Defendant John W. Dwyer is a resident of the state of Maryland. In March 1993, Defendant John W. Dwyer founded Capital Funding Group, Inc., a named defendant herein. During all times relevant to this suit, Defendant John W. Dwyer was the chairman, founding shareholder and senior underwriter of both the large mortgage banking firm Capital Finance Bancorp, Inc., specializing in originating and servicing FHA-insured construction and permanent loans for nursing homes, hospitals, assisted living, board and care facilities and other income properties, and CFG Community Bank, a full-service commercial bank. CFG Community Bank is the parent company of Capital Funding, LLC and Capital Finance, LLC, both of whom are named defendants herein. Further, CFG Community Bank is an affiliate of Capital SeniorCare Ventures, LLC, a named defendant herein. Defendant John W. Dwyer holds a 100% ownership or controlling interest of an Electing Small Business Trust (ESBT) known as The John W. Dwyer 2011 ESBT. The John W. Dwyer ESBT holds a 100% ownership or controlling interest in Capital Funding Group. During all times relevant hereto, two entities operated under the trade name "Capital Funding Group": 1) Defendant Capital Funding Group, Inc. and 2) Defendant Capital Funding, LLC d/b/a Capital Funding Group. Defendant John W. Dwyer may be served at his last known address.

14

27.     On July 28, 2011, EOR-ARK, LLC, VAJ LLC, Defendant SLC Operations Holdings, LLC, Defendant Senior Living Communities of Arkansas, LLC, 13 SLC operating entities collectively called the "Operator Holding Companies," William Smith, Pamela Smith, and Jerry Kemper, as "Sellers," entered into a Membership Interests Purchase Agreement with Defendant Arkansas SNF Operations Acquisition, LLC, as the "Purchaser," whereby Defendant Arkansas SNF Operations Acquisition, LLC agreed to purchase 100% of Sellers' equity and ownership interests in Defendant SLC Professionals Holdings, LLC, Dumas Holdings, LLC, SLC Property Investors, LLC, SLC Property Holdings, LLC, SLC Properties, LLC, Defendant SLC Operations Master Tenant, LLC, Glenwood Health & Rehabilitation, LLC, the Operator Holding Companies, Stonegate Villa Health & Rehabilitation, LLC, Hot Springs Health & Rehabilitation, LLC, Clarksville Community Health & Rehabilitation, LLC, and Dumas Acquisition, LLC, which made up the SLC group leasing and operating 16 long term care facilities in Arkansas, for an aggregate purchase price of $3,350,000. The closing date for the sale evidenced by the Membership Interests Purchase Agreement was September 1, 2011.

28.     Defendant Capital Funding Group, Inc. is a Maryland corporation with its principal office located at 1422 Clarkview Rd., Baltimore, Maryland 21209. Defendant Capital Funding Group, Inc. is a mortgage banking firm that holds itself out as the leading provider of HUD/ FHA insured loans for healthcare. The services the company provides include permanent, acquisition and construction financing. Upon information and belief, Defendant Capital Funding Group, Inc., itself, or by or through its affiliates, including Defendant Capital Funding, LLC, provided the financing for Defendant Arkansas SNF Operations Acquisition, LLC's September 1, 2011, purchase of the 16

15

SLC-operated long term care facilities. Pursuant to the terms of the Membership Interests Purchase Agreement, Defendant Capital Funding Group, Inc. agreed to guarantee $2,000,000 in promissory notes delivered by Defendant Arkansas SNF Operations Acquisition, LLC in connection with the purchase. The agent for service of process on Defendant Capital Funding Group, Inc. is HIQ Maryland Corporation, 715 St. Paul Street, Baltimore, Maryland 21202.

29. Defendant Capital Funding, LLC d/b/a Capital Funding Group is a Maryland limited liability company that was organized April 7, 2009, as a subsidiary of CFG Community Bank. Its principal office is located at 1422 Clarkview Rd., Baltimore, Maryland 21209. Defendant Capital Funding, LLC is a mortgage banking firm specializing and focusing solely on HUD loans made to the healthcare sector. During all relevant times hereto, Defendant Capital Funding, LLC provided permanent, acquisition and construction financing in the healthcare sector. Upon information and belief, Defendant Capital Funding, LLC, helped facilitate the September 1, 2011, purchase by Defendant Arkansas SNF Operations Acquisition, LLC of the 16 SLC operated long term care facilities in Arkansas. The agent for service of process on Defendant Capital Funding, LLC is HIQ Maryland Corporation, 715 St. Paul Street, Baltimore, Maryland 21202.

30. Capital Funding Group holds a ninety percent (90%) membership interest in CSCV Holdings, LLC, a named defendant herein. Defendant CSCV Holdings, LLC is a Maryland limited liability company organized on July 15, 2011. Defendant CSCV Holdings, LLC's principal office is located at 1422 Clarkview Road, Baltimore, Maryland 21209. Brian Reynolds holds the remaining ten percent (10%) membership interest in

16

Defendant CSCV Holdings, LLC.  During all times relevant hereto, Brian Reynolds, a resident of Maryland, has been the Managing Director of Long Term Care at Defendant Capital Funding, LLC.  In addition to overseeing long term care business development for Defendant Capital Funding, LLC, during all relevant times hereto, Mr. Reynolds has overseen the skilled nursing equity investments through Capital SeniorCare Ventures, LLC, a named defendant herein. The agent for service of process on Defendant CSCV Holdings, LLC is HIQ Maryland Corporation, 715 St. Paul Street, Baltimore, Maryland 21202.

31.    Defendant CSCV Holdings, LLC holds a 51% Interest of Arkansas SNF Operations Acquisition, LLC, a named defendant herein. Defendant Arkansas SNF Operations Acquisition, LLC is a Delaware limited liability company organized on June 15, 2011.  Defendant Arkansas SNF Operations Acquisition, LLC's principal office is located at 1422 Clarkview Road, Baltimore, Maryland, 21209. The agent for service of process on Defendant Arkansas SNF Operations Acquisition, LLC is HIQ Maryland Corporation, 3500 Dupont Highway, Dover, Delaware 19901.

32.    The remaining 49% ownership in Defendant Arkansas SNF Operations Acquisition, LLC is owned and/or controlled by Arkansas Nursing Home Acquisition, LLC, a named defendant herein.  Defendant Arkansas Nursing Home Acquisition, LLC is a Virginia limited liability company organized on July 22, 2011.  Defendant Arkansas Nursing Home Acquisition, LLC's principal office is located at 4100 Monument Corner Drive, Suite 500, Fairfax, Virginia 22030.   Defendant Arkansas Nursing Home Acquisition, LLC is one hundred percent (100%) owned and/or controlled by Alan Zuccari, the President and CEO of Hamilton Insurance Agency, a fictitious name for

17

Alan J. Zuccari, Inc.  The agent for service of process on Defendant Arkansas Nursing Home Acquisition, LLC is Gentry Locke Rakes & Moore LLP, 10 Franklin Road, SE, Suite 800 SunTrust Plaza, P.O. Box 40013, Roanoke, Virginia 24022-0013.

33.     Defendant Capital Finance, LLC is a Maryland limited liability company organized on October 4, 2005 as a subsidiary of CFG Community Bank.  Its principal office is located at 1422 Clarkview Rd., Baltimore, Maryland 21209.  During all times relevant hereto, Defendant Capital Finance, LLC provided accounts receivable-based financing to skilled nursing facilities, including Defendant Premier Health and Rehabilitation, LLC, through revolving lines of credit secured by Medicare, Medicaid and Managed Care accounts receivable.  At all relevant times herein, moneys from the operation of Defendant Premier Health and Rehabilitation, LLC were swept into an account owned by Defendant Capital Finance, LLC as collateral for the working capital loan that Defendant Capital Finance, LLC provided.  The agent for service of process on Defendant Capital Finance, LLC is HIQ Maryland Corporation, HIQ Corporate Services, Inc., 715 St. Paul Street, Baltimore, Maryland 21202.

34.     Since Arkansas SNF Operations Acquisition, LLC's acquisition of the SLC facilities on September 1, 2011, the quality assurance nurses formerly employed by Defendant Quality Review, LLC, have continued to perform the same services as employees of Defendant SLC Professionals of Arkansas, LLC, pursuant to a Continuing Consulting Agreement with the new ownership.

35.     Defendant Premier Health and Rehabilitation, LLC is a domestic limited liability company that was organized on December 8, 2008.  During all times relevant hereto, Defendant Premier Health and Rehabilitation, LLC has held the license for a

nursing facility located at 3600 Richards Road, North Little Rock, Pulaski County, Arkansas 72117.  The Premier Health and Rehabilitation facility was one of the facilities purchased by Capital SeniorCare Ventures, LLC from Beverly Enterprises-Arkansas, Inc.  The facility was leased by the single purpose landlord entity 3600 Richards Road, LLC, an Arkansas limited liability company, to SLC Properties, LLC, and, until September 1, 2011, was operated by Premier Health and Rehabilitation, LLC and the SLC entities named herein.

36.     On September 1, 2011, Defendant Arkansas SNF Operations Acquisition, LLC acquired 100% of the membership interests in Defendant Premier Health and Rehabilitation, LLC, pursuant to a Membership Interest Purchase Agreement/ Change of Ownership.  That same date, Defendant Arkansas SNF Operations Acquisition, LLC entered into an Amended and Restated Limited Liability Company Operating Agreement, whereby Defendant Premier Health and Rehabilitation, LLC's principal place of business was changed to 1422 Clarkview Road, Baltimore, Maryland 21209.  Pursuant to the Amended and Restated Operating Agreement, Defendant Premier Health and Rehabilitation, LLC is organized solely to sublease and operate the skilled nursing facility located at 3600 Richards Road, North Little Rock, Pulaski County, Arkansas 72117, commonly known as Premier Health and Rehabilitation.

37.     The September 1, 2011, Amended and Restated Operating Agreement provides that Defendant John W. Dwyer, on behalf of Defendant Arkansas SNF Operations Acquisition, LLC, has the sole authority to appoint the managers of Defendant Premier Health and Rehabilitation, LLC, who, initially, are Daniel S. Baird and Brian K. Reynolds.  Further, Defendant John W. Dwyer retains authority to remove

or replace the managers "at any time for any reason." Although the managers are given authority to bind and act on behalf of Defendant Premier Health and Rehabilitation, LLC in the ordinary course of business, the managers may not, without the express written approval of Defendant John W. Dwyer, sell, transfer, acquire, finance, or encumber any interest in the facility, take any action that causes the Company to exceed a budgeted expense by more than 5%, cause the Company to incur any debt or other obligation, make any loans, file a petition for bankruptcy, admit a new member, require additional capital contributions, merge or consolidate the Company, or pledge any membership interest of a member. The agent for service of process for Defendant Premier Health and Rehabilitation, LLC, is Corporation Service Company, 300 Spring Building, Suite 900, 300 South Spring Street, Little Rock, Arkansas 72201.

38. At times relevant hereto, Defendant North Little Rock Holdings, LLC was the 100% owner of Premier Health and Rehabilitation, LLC. North Little Rock Holdings, LLC is a foreign limited liability company that at times material to this lawsuit owned, operated, managed, controlled and/or provided services to Premier Health and Rehabilitation, LLC. The causes of action made the basis of this suit arose out of Defendant North Little Rock Holdings, LLC's ownership, operation, management, control and/or services provided for Premier Health and Rehabilitation, LLC during the residency of Joyce Lee Vinson. The agent for service of process for Defendant North Little Rock Holdings, LLC is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

39.     Upon information and belief, Defendant Steve Hudgens, a resident of the State of Arkansas, was an Administrator of Premier Health and Rehabilitation, LLC at times during the residency of Joyce Lee Vinson.  Defendant Steve Hudgens may be served at his current address.

40.     Defendants John Doe 1 through 5 are entities and/or persons, either providing care and services to Joyce Lee Vinson, or directly or vicariously liable for the injuries of Joyce Lee Vinson.  Plaintiff is currently unable to identify these Unknown Defendants, despite diligent efforts, but may discover such identities upon further investigation.  Said Defendants are named insofar as their acts and/or omissions were negligent, tortious or otherwise wrongful with respect to the care, treatment and services provided to or withheld from Joyce Lee Vinson during her residency at Defendants' facility.

41.     Joyce Lee Vinson was admitted on June 19, 2009, as a resident of Golden LivingCenter – North Little Rock n/k/a Defendant Premier Health and Rehabilitation, LLC.   Except for times when she was hospitalized, Joyce Lee Vinson remained a resident of the facility until December 9, 2011, when she was transferred to Baptist Health Medical Center – North Little Rock.  Joyce Lee Vinson died on December 16, 2011.

42.     That part of the residency of Joyce Lee Vinson which is the subject of this Complaint is the residency of Joyce Lee Vinson during the ownership, operation and/or management of the facility by Nursing Home Defendants, from July 1, 2009 through December 9, 2011.

21

43.     Cindy Clough, a daughter of Joyce Lee Vinson, and a resident of Lonoke, Arkansas, is the Personal Representative of the of the Estate of Joyce Lee Vinson, deceased, pursuant to Order of Pulaski County Circuit Court, Probate Division, Case No. 60PR-2012-1665, attached hereto as **Exhibit A**, and brings this claim on behalf of the Estate of Joyce Lee Vinson, deceased, and on behalf of the wrongful death beneficiaries of Joyce Lee Vinson, pursuant to the Arkansas Survival of Actions Statute (Ark. Code Ann. § 16-62-101) and the Arkansas Wrongful Death Act (Ark. Code Ann. § 16-62-102).  Cindy Clough brings this action against Defendants claiming damages on behalf of Joyce Lee Vinson arising out of care, services and treatment by Defendants during the time that Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC.

44.     Whenever the term "Nursing Home Defendants" is utilized within this suit, such term collectively refers to, and includes Capital SeniorCare Ventures, LLC; Column Guaranteed LLC; SLC Properties, LLC; SLC Property Holdings, LLC; EOR-ARK, LLC; VAJ LLC; SLC Operations Master Tenant, LLC; SLC Operations Holdings, LLC; Senior Living Communities of Arkansas, LLC; SLC Professionals, LLC f/k/a SLC Professionals of Arkansas, LLC; SLC Professionals Holdings, LLC; Senior Vantage Point, LLC; ADDIT, LLC; Quality Review, LLC; John W. Dwyer; Capital Funding Group, Inc.; Capital Funding, LLC d/b/a Capital Funding Group; CSCV Holdings, LLC; Arkansas SNF Operations Acquisition, LLC; Arkansas Nursing Home Acquisition, LLC; Capital Finance, LLC; Premier Health and Rehabilitation, LLC; North Little Rock Holdings, LLC; and unknown John Doe Defendants.

45.    Whenever the term "Administrator Defendant" is utilized within this suit, such term refers to Steve Hudgens.

46.    Whenever the term "Defendants" is utilized within this suit, such term collectively refers to, and includes, all named Defendants in this lawsuit, including unknown John Doe Defendants.

47.    Jurisdiction and venue are proper in this Court.

## FACTUAL ALLEGATIONS REGARDING THE INJURIES INCURRED BY JOYCE LEE VINSON

48.    Joyce Lee Vinson was admitted on June 19, 2009, as a resident of the facility then known as Golden LivingCenter – North Little Rock n/k/a Premier Health and Rehabilitation, LLC (sometimes referred to herein as "the facility") located at 3600 Richards Road, North Little Rock, Pulaski County, Arkansas 72117.  Except for times when she was hospitalized, Joyce Lee Vinson remained a resident of the facility until December 9, 2011, when she was transferred to Baptist Health Medical Center – North Little Rock.  Joyce Lee Vinson died on December 16, 2011.

49.    During her residency, Joyce Lee Vinson became a total care resident of Premier Health and Rehabilitation, LLC.  She was dependent upon facility staff for assistance with activities of daily living, including bathing, oral hygiene, grooming, dressing and transfers.

50.    At times during her residency, Joyce Lee Vinson lacked sufficient understanding or capacity to make or communicate decisions to meet the essential requirements for her health and safety, and she was incapable of conducting or managing her personal and business affairs.  Thus, Joyce Lee Vinson was "insane" as that term has been interpreted pursuant to Ark. Code Ann. section 28-65-101.

23

51.    The severity of the recurrent negligence inflicted upon Joyce Lee Vinson while under the care of the Defendants at the facility accelerated the deterioration of her health and physical condition and resulted in the physical and emotional injuries, including, but not limited to those described below:

a)    Multiple falls, with injuries;

b)    Compression fractures

c)    Skin issues, including skin breakdown;

d)    Pressure sores;

e)    Malnutrition;

f)    Weight loss;

g)    Dehydration;

h)    Constipation;

i)    Infections, including urinary tract infection with *E. coli*, abscess on buttock, cellulitis, *staphylococcus septicemia*, and necrotizing fasciitis with gangrene;

j)    Cerumen impaction;

k)    Poorly controlled blood pressure;

l)    Metabolic encephalopathy;

m)    Acute renal failure;

n)    Poor hygiene;

o)    Pain; and

p)    Untimely death.

The above-identified injuries, as well as the conduct specified below, caused Joyce Lee Vinson to suffer loss of personal dignity, pain and suffering, hospitalizations, mental anguish, degradation, disability, disfigurement, and emotional distress.

52.     In surveys and inspections conducted in 2009 for Premier Health and Rehabilitation, LLC, during the residency of Joyce Lee Vinson, the Arkansas Office of Long Term Care repeatedly cited the facility for deficiencies in the care, treatment and services provided to residents, including but not limited to failures to:

a)     Provide care by qualified persons according to each resident's written plan of care;

b)     Assist those residents who need total help with eating/drinking, grooming and personal and oral hygiene;

c)     Give residents proper treatment to prevent new bed (pressure) sores or heal existing bed sores;

d)     Make sure that each resident who enters the nursing home without a catheter is not given a catheter, and receives proper services to prevent urinary tract infections and restore normal bladder function;

e)     Make sure that residents with reduced range of motion get proper treatment and services to increase range of motion;

f)     Properly care for residents needing special services, including injections, colostomy, ureostomy, ileostomy, tracheostomy care, tracheal suctioning, respiratory care, foot care, and prostheses;

g)     Allow residents the right to participate in the planning or revision of the resident's care plan;

h)     Try to resolve each resident's complaints quickly;

i)     Make sure menus meet the resident's nutritional needs and that there is a prepared menu by which nutritious meals have been planned for the resident and followed;

j)     Provide 3 meals at regular times, serve breakfast within 14 hours after dinner, or offer a snack at bedtime each day;

25

k)    Keep the rate of medication errors (wrong drug, wrong dose, wrong time) to less than (5%) five percent;

l)    Make sure that residents are safe from serious medication errors;

m)    Provide housekeeping and maintenance services;

n)    Provide clean bed and bath linens that are in good condition;

o)    Make sure that the nursing home area is free from accident hazards and risks and provides supervision to prevent avoidable accidents; and

p)    Make sure there is a pest control program to prevent/deal with mice, insects, or other pests.

53.    In surveys and inspections conducted in 2010 for Premier Health and Rehabilitation, LLC, during the residency of Joyce Lee Vinson, the Arkansas Office of Long Term Care repeatedly cited the facility for deficiencies in the care, treatment and services provided to residents, including but not limited to failures to:

a)    Make sure that the nursing home area is free from accident hazards and risks and provides supervision to prevent avoidable accidents;

b)    Hire only people with no legal history of abusing, neglecting or mistreating residents, or report and investigate any acts or reports of abuse, neglect of mistreatment of residents;

c)    Develop policies that prevent mistreatment, neglect, or abuse of residents or theft of resident property;

d)    Provide care by qualified persons according to each resident's written plan of care;

e)    Provide necessary care and services to maintain the highest well being of each resident;

f)    Assist those residents who need total help with eating/drinking, grooming and personal and oral hygiene;

g)    Give residents proper treatment to prevent new bed (pressure) sores or heal existing bed sores;

26

h)      Give each resident enough fluids to keep them healthy and prevent dehydration;

i)      Make sure that menus meet the resident's nutritional needs and that there is a prepared menu by which nutritious meals have been planned for the resident and followed;

j)      Store, cook and serve food in a safe and clean way;

k)      Make sure that residents are safe from serious medication errors;

l)      Provide housekeeping and maintenance services;

m)      Make sure that the nursing home area is free from accident hazards and risks and provides supervision to prevent avoidable accidents; and

n)      Have a program that investigates, controls and keeps infection from spreading.

54.     In surveys and inspections conducted for Premier Health and Rehabilitation, LLC in 2011, during the residency of Joyce Lee Vinson, the Arkansas Office of Long Term Care repeatedly cited the facility for deficiencies in the care, treatment and services provided to residents, including but not limited to failures to:

a)      Make sure that each resident who enters the nursing home without a catheter is not given a catheter, and receive proper services to prevent urinary tract infections and restore normal bladder function;

b)      Provide care by qualified persons according to each resident's written plan of care;

c)      Make sure services provided by the nursing facility meet professional standards of quality;

d)      Keep each resident's personal and medical records private and confidential;

e)      Make sure menus meet the resident's nutritional needs and that there is a prepared menu by which nutritious meals have been planned for the resident and followed;

27

    f)      Store, cook, and serve food in a safe and clean way;

    g)      Make sure that the nursing home area is free from accident hazards and risks and provides supervision to prevent avoidable accidents;

    h)      Have a program that investigates, controls and keeps infection from spreading; and

    i)      Provide housekeeping and maintenance services.

55.    Civil monetary penalties were imposed by the Arkansas Office of Long Term Care in 2010 due to the deficiencies found at the Premier Health and Rehabilitation facility on January 7, 2010.

56.    The extent to which the above citations directly included failures or deficiencies in the care, services and treatment provided to Joyce Lee Vinson remains to be discovered.  However, all of the above cited deficiencies establish that Defendants were on notice and aware of problems with resident care, including failures and deficiencies in care which caused the injuries alleged herein.

## CAUSES OF ACTION AGAINST NURSING HOME DEFENDANTS

57.    Based upon the foregoing allegations regarding Nursing Home Defendants' control and management of Premier Health and Rehabilitation, LLC, and the injuries suffered by Joyce Lee Vinson while she resided at the facility, Plaintiff pleads the following causes of action:

I.    **Cause of action for ordinary negligence and failures in ordinary duties of care imposed on a long-term care facility.**

58.    Based upon the allegations of control, management and involvement in the operation of Premier Health and Rehabilitation, LLC outlined above, each of the Nursing Home Defendants, as well as their agents and employees, undertook duties of

care to the residents at Premier Health and Rehabilitation, LLC, including Joyce Lee Vinson.

59.     Based upon the state surveys of the facility and the assessments of Joyce Lee Vinson alleged in the above paragraphs, it was foreseeable to each of the Nursing Home Defendants that harm would result to Joyce Lee Vinson if Nursing Home Defendants did not provide at least the care equivalent that is required of a nursing home caring for a resident in a similar state of health, mental status and abilities.

60.     Among the duties Nursing Home Defendants owed to Joyce Lee Vinson as the owners, operators, licensees, managers and consultants, agents and employees of Premier Health and Rehabilitation, LLC, Nursing Home Defendants were obligated to use ordinary care to determine the mental and physical condition of Joyce Lee Vinson, to furnish Joyce Lee Vinson the care and attention reasonably required by her mental and physical condition, and to follow the orders and directions of Joyce Lee Vinson's attending physician and care plan regarding her activities of daily living and ordinary caretaking.

61.     While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to assist Joyce Lee Vinson with her activities of daily living, including the failure to assist with transfers.

62.     While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to assist Joyce Lee Vinson with turning and repositioning, and failed to use and maintain pressure relieving devices, to prevent or relieve decubitus ulcers or pressure sores.

63.     While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to provide proper supervision and intervention to prevent falls, including falls with injuries.

64.     While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to provide adequate oversight to ensure a safe environment.

65.     While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to provide Joyce Lee Vinson with fluids sufficient to prevent dehydration, constipation, and urinary tract infections.

66.     While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to provide a sanitary environment and proper hygiene to prevent the development of infections, such as urinary tract infections with *E. coli*, inner ear infections, abscess on buttock, *staphylococcus septicemia*; cellulitis, and necrotizing fasciitis with gangrene.

67.     While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to assist Joyce Lee Vinson with eating and failed to provide proper diet, as required for adequate nutrition to maintain her weight.

68.     While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to provide basic care to ensure Joyce Lee Vinson's quality of care and quality of life.

69.     While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to provide Joyce Lee Vinson assistance with activities of daily living, hygiene and grooming and failed to sufficiently document the

bathing, oral hygiene, grooming, and/or dressing provided to Joyce Lee Vinson during her admission.

70. While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to provide Joyce Lee Vinson skin care treatments to maintain her skin integrity.

71. While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to document provision of Resident Right's, Social Services, or Restorative Care to Joyce Lee Vinson.

72. Nursing Home Defendants were negligent in the hiring, training, retention and supervision of non-medical, caretaking staff and the professional nursing staff at Premier Health and Rehabilitation, LLC.

73. Nursing Home Defendants understood that staffing at minimum levels did not necessarily meet the needs required by residents at Premier Health and Rehabilitation, LLC, such as Joyce Lee Vinson. Nursing Home Defendants also were aware that the biggest expenditure in their operating budget was staffing the facility. Nursing Home Defendants sought and kept staffing at or below minimum levels, knowing that this staffing strategy would result in injury to residents at Premier Health and Rehabilitation, LLC, including Joyce Lee Vinson.

74. The foregoing breaches of duties of ordinary care owed by the Nursing Home Defendants, in a natural and continuous sequence, were each a proximate cause of the injuries incurred by Joyce Lee Vinson at Premier Health and Rehabilitation, LLC, including her untimely death, and without which, the injuries alleged herein would not have occurred.

75.   A reasonable nursing home, operating under the same or similar circumstances as Premier Health and Rehabilitation, LLC, would not have breached the above-described duties of care.   It was reasonably foreseeable that the injuries described herein, including Joyce Lee Vinson's death, would result from the breaches of duties of care set out above.

76.   Due to the injuries proximately caused by Nursing Home Defendants, the Estate of Joyce Lee Vinson is entitled to be compensated by an amount of money which will reasonably and fairly compensate it for damages and which includes, but is not limited to, compensation for Joyce Lee Vinson's serious physical and emotional injuries, expenses for medical care, treatment and services, pain and suffering and mental anguish, disfigurement, degradation, loss of personal dignity, loss of life and related expenses, in an amount to be determined by a jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which Plaintiff is determined to be entitled by law.   The personal injuries suffered by Joyce Lee Vinson caused her family to suffer grief upon her death.   In addition to the Estate of Joyce Lee Vinson's claim for compensatory damages, the wrongful death beneficiaries of Joyce Lee Vinson request compensatory damages against Nursing Home Defendants for the wrongful death of Joyce Lee Vinson, including their grief suffered, as well as the expenses of funeral and other related expenses.

77.   In addition to compensatory damages for the actual losses that Joyce Lee Vinson and her wrongful death beneficiaries sustained, Plaintiff also is entitled to recover punitive damages for the negligent conduct of Nursing Home Defendants.   The

32

Plaintiff alleges that Nursing Home Defendants knew, or ought to have known, in the light of the surrounding circumstances, that their conduct and the manner in which Premier Health and Rehabilitation, LLC was operated, would naturally and probably result in injury to residents, such as Joyce Lee Vinson, and yet Nursing Home Defendants continued such conduct with actual malice or in reckless disregard of the consequences from which malice may be inferred.

## II.   Cause of action for medical malpractice negligence and failures in professional standards of care imposed on a long-term care facility.

78.   Wrongful conduct by Nursing Home Defendants, their agents and employees, also included acts or omissions constituting professional medical or nursing negligence, pursuant to the Actions for Medical Injury Act, Arkansas Code sections 16-114-201 *et seq.*, to the extent the above-described injuries incurred by Joyce Lee Vinson included "medical injuries," as defined by that Act.

79.   Each of the Nursing Home Defendants was either a "medical care provider" or was vicariously liable for the conduct of a "medical care provider," as defined by the Act, Arkansas Code section 16-114-201(2), in relevant part, as a nurse, nursing home, or an officer, employee or agent thereof acting in the course and scope of employment in the providing of such medical care or medical services.

80.   In diagnosing the condition of and treating a patient through the provision of services requiring the judgment, skills and/or training of licensed medical or nursing personnel, a nursing home has a professional duty to possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of the same profession in good standing, engaged in the same skilled nursing home practice in the locality in which the nursing home practices or in a similar locality.

33

81.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to assess the risk and care plan for falls, including falls with injuries.

82.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to timely assess, care plan, document and follow orders to use pressure relieving devices to prevent or relieve decubitus ulcers or pressure sores, as well as failing to professionally monitor their use.

83.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to timely assess, care plan, document and prevent or treat inner ear and urinary tract infections.

84.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to timely assess, care plan, document and prevent or treat altered skin integrity.

85.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to timely assess, care plan, document and prevent or treat infections, including urinary tract infections with *E. coli*, inner ear infections, abscess on buttock, *staphylococcus septicemia*; cellulitis, and necrotizing fasciitis with gangrene.

86.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to timely assess, care plan, document and adequately control her blood pressure.

34

87.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to timely assess, care plan, document and prevent, treat or manage pain.

88.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to timely assess, care plan, document and notify Joyce Lee Vinson's physician and family about substantial changes in her condition and mental status.

89.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to timely assess, care plan, document and treat or intervene to prevent malnutrition and weight loss.

90.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to timely assess, care plan, document and treat or intervene to prevent chronic dehydration resulting in acute renal failure.

91.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants failed to follow ordered safety measures.

92.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Nursing Home Defendants maintained inadequate nursing records and were incomplete in documenting nursing care.

93.   The foregoing breaches of duties of profession medical and nursing standards of care owed by Nursing Home Defendants, in a natural and continuous sequence, were each a proximate cause of the injuries incurred by Joyce Lee Vinson at Premier Health and Rehabilitation, LLC, including her untimely death, and without which breaches of care her injuries and untimely death would not have occurred.

94.     A nursing home, in good standing and engaged in the practice of skilled long-term care in the same or a similar locality, would not have breached the above-described duties of professional medical or nursing care. It was reasonably foreseeable that the injuries described herein, including Joyce Lee Vinson's untimely death would result from the breaches of duties of professional care set out above.

95.     Due to the injuries proximately caused by the professional medical and nursing negligence of the Nursing Home Defendants, the Estate of Joyce Lee Vinson is entitled to be compensated by an amount of money, which will reasonably and fairly compensate it for damages and which includes, but is not limited to, compensation for serious physical and emotional injuries, necessary medical care, treatment and services, pain and suffering and mental anguish, disfigurement, disability, degradation, loss of personal dignity, loss of life, and related expenses, in an amount to be determined by a jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which Plaintiff is determined to be entitled by law. The personal injuries suffered by Joyce Lee Vinson caused her family to suffer grief upon her death. In addition to the Estate of Joyce Lee Vinson's claim for compensatory damages, the wrongful death beneficiaries of Joyce Lee Vinson request compensatory damages against Nursing Home Defendants for the wrongful death of Joyce Lee Vinson, including their grief suffered, as well as the expenses of funeral and other related expenses.

96.     In addition to compensatory damages for the actual losses that Joyce Lee Vinson and her wrongful death beneficiaries sustained, Plaintiff also is entitled to

recover punitive damages for the professional medical and nursing negligence of Nursing Home Defendants.  Plaintiff alleges that Nursing Home Defendants knew, or ought to have known, in the light of the surrounding circumstances, that their conduct and the manner in which Premier Health and Rehabilitation, LLC was operated would naturally and probably result in injury to residents, such as Joyce Lee Vinson.  Yet, Nursing Home Defendants continued such conduct with actual malice or in reckless disregard of the consequences from which malice may be inferred.

### III.    Cause of action for civil conspiracy.

97.    Even if some of the Nursing Home Defendants did not directly participate in the tortious acts described in the preceding paragraphs, they are liable for a conspiracy promoting wrongful conduct in a manner that caused injury to Joyce Lee Vinson.

98.    Nursing Home Defendants had actual agreements regarding the patient census, levels of staffing, and amount of funds to be used in operating the Premier Health and Rehabilitation facility.

99.    Nursing Home Defendants actively monitored deficiencies in care at the Premier Health and Rehabilitation facility, as cited by the State of Arkansas in surveys, and were aware during the residence of Joyce Lee Vinson that the operating funds being expended at the facility were not sufficient to meet the needs of the residents.

100.    Each Nursing Home Defendant performed a part so that their acts, although apparently independent, were in fact connected and cooperative, indicating a closeness of personal association and a concurrence of sentiment.

101.   Additionally, each Nursing Home Defendant is liable for conspiracy to the extent any act or declaration was made by another Defendant in furtherance of the conspiracy.

102.   Defendant John W. Dwyer is directly liable for his participation in the conspiracy to the extent that he acted outside his agent or employee capacity and acted for his own personal benefit, rather than the benefit of any entity defendant.

103.   One or more of the Nursing Home Defendants engaged in a conspiracy to obtain HUD financing for the purchase and lease of the Premier Health and Rehabilitation facility, in order to profit from the lease and fees, knowing that adequate operating funds would not be provided to meet the needs of residents such as Joyce Lee Vinson.

104.   It may be inferred from Nursing Home Defendants' actions that, knowing the risks and dangers such conduct posed to residents such as Joyce Lee Vinson, Nursing Home Defendants pursued a course of conduct to divert Medicare and Medicaid funds intended to be used for patient care and services and, instead, funneled that money into corporate profits.

105.   Due to the injuries proximately caused by the tortious acts done in furtherance of a conspiracy between the Nursing Home Defendants, the Estate of Joyce Lee Vinson is entitled to be compensated by an amount of money, which will reasonably and fairly compensate it for damages and which includes, but is not limited to, compensation for Joyce Lee Vinson's serious physical and emotional injuries, expenses for medical care, treatment and services, pain and suffering and mental anguish, disfigurement, disability, degradation, loss of personal dignity, loss of life, and related

expenses in an amount to be determined by a jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which Plaintiff is determined to be entitled by law.

106.   In addition to compensatory damages for the actual losses that Joyce Lee Vinson and her wrongful death beneficiaries sustained, Plaintiff also is entitled to recover punitive damages for the civil conspiracy on the part of the Nursing Home Defendants.   Plaintiff alleges that Nursing Home Defendants knew, or ought to have known, in the light of the surrounding circumstances, that their conspiracy in the manner in which Premier Health and Rehabilitation, LLC was operated would naturally and probably result in injury to residents, such as Joyce Lee Vinson.   Yet, Nursing Home Defendants continued such conduct with actual malice or in reckless disregard of the consequences from which malice may be inferred.

**IV.   Cause of action against Premier Health and Rehabilitation, LLC, for violations of resident's rights, pursuant to the Protection Of Long-Term Care Facility Residents Act, Arkansas Code sections 20-10-1201.**

107.   Among the Defendants, the licensee(s) of Premier Health and Rehabilitation, LLC had statutorily-mandated duties to provide Joyce Lee Vinson with basic, nursing home resident's rights as set forth in the Protection of Long-Term Care Facility Residents Act, Arkansas Code sections 20-10-1201 *et seq.*

108.   The Protection of Long-Term Care Facility Residents Act mandates the development, establishment, and enforcement of basic standards for the health, care, and treatment of persons in long-term care facilities; and mandates that the

maintenance and operation of long-term care facilities will ensure safe, adequate, and appropriate care, treatment, and health of residents, such as Joyce Lee Vinson.

109. The Protection of Long-Term Care Facility Residents Act mandates that every licensed facility shall comply with all applicable standards and rules of the Office of Long-Term Care of the Arkansas Department of Human Services.

110. The statutory duty imposed upon the licensee(s) of Premier Health and Rehabilitation, LLC to prevent deprivation or infringement of the resident's rights of Joyce Lee Vinson was non-delegable. Thus, among the Defendants, the licensee(s) are directly liable to Plaintiff for any deprivation and infringement of Joyce Lee Vinson's resident's rights occurring as a result of their own action or inaction, and as a result of the action or inaction of any other person or entity, including employees, agents, consultants, independent contractors and affiliated entities, whether in-house or outside entities, individuals, agencies or pools, as well as any deprivation and infringement of Joyce Lee Vinson's resident's rights caused by the Defendants' policies, procedures, whether written or unwritten, and common practices.

111. Any person or entity acting as an employee or agent of Premier Health and Rehabilitation, LLC assumed and undertook to perform the licensee's non-delegable and statutorily-mandated duty to provide and protect Joyce Lee Vinson's nursing home resident's rights as set forth in Arkansas Code sections 20-10-1201 *et seq.* in the operation and management of Premier Health and Rehabilitation, LLC.

112. Notwithstanding the responsibility of the licensee(s) to protect and provide for these statutorily-mandated, nursing home resident's rights, Defendants infringed

40

upon, and Joyce Lee Vinson was deprived of, rights mandated by Arkansas Code sections 20-10-1201 *et seq.* including, but not limited to, the following:

a)      The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activities, and therapeutic and rehabilitative services consistent with the resident care plan for Joyce Lee Vinson with established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:

1)      The right to receive adequate and appropriate custodial service, defined as care for Joyce Lee Vinson which entailed observation of diet and sleeping habits and maintenance of a watchfulness over her general health, safety, and well-being; and

2)      The right to receive adequate and appropriate residential care plans, defined as a written plan developed, maintained, and reviewed not less than quarterly by a registered nurse, with participation from other facility staff and Joyce Lee Vinson or her designee or legal representative, which included a comprehensive assessment of the needs of Joyce Lee Vinson, a listing of services provided within or outside the facility to meet those needs, and an explanation of service goals;

b)      The right to regular, consultative, and emergency services of physicians;

c)      The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

d)      The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of Joyce Lee Vinson, and not directly furnished by the licensee(s);

e)      The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

f)      The right to a facility with its premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

g)      The right to be free from mental and physical abuse, and from physical and chemical restraints;

h)      The right of Joyce Lee Vinson to have privacy of her body in treatment and in caring for her personal needs;

i)      The right to prompt efforts by the facility to resolve resident grievances, including grievances with respect to resident care and the behavior of other residents;

j)      The right to participate in social, religious, and community activities;

k)      The right to the obligation of the facility to keep full records of the admissions and discharges of Joyce Lee Vinson, and her medical and general health status, including:

1)      medical records;

2)      personal and social history; and

3)      individual resident care plans, including, but not limited to, prescribed services, service frequency and duration, and service goals;

4)      making it a criminal offense to fraudulently alter, deface, or falsify any medical or other long-term care facility record, or cause or procure any of these offenses to be committed; and

l)      The right to be treated courteously, fairly, and with the fullest measure of dignity.

42

113.   The above infringement and deprivation of the rights of Joyce Lee Vinson were the result of Defendants failing to do that which a reasonably careful person would do under similar circumstances.

114.   As a result of the aforementioned violations, the Estate of Joyce Lee Vinson, pursuant to Arkansas Code section 20-10-1209(a)(4), is entitled to recover actual damages against the licensee(s) of the facilities.   Plaintiff asserts a claim for judgment for actual damages against the licensee(s) of Premier Health and Rehabilitation, LLC, including, but not limited to, medical expenses, pain and suffering, otherwise unnecessary hospitalizations, disfigurement, disability, degradation, emotional distress, unnecessary loss of personal dignity, loss of life and related expenses in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and xceeding that required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which Plaintiff is entitled by law.

115.   The infringement or deprivation of the resident's rights of Joyce Lee Vinson by Defendants was willful, wanton, gross, flagrant, reckless, or consciously indifferent.   Pursuant to Arkansas Code section 20-10-1209(c), Plaintiff is entitled to recover punitive damages against the licensee(s) of Premier Health and Rehabilitation, LLC.

## CAUSES OF ACTION AGAINST ADMINISTRATOR DEFENDANT

I.   **Cause of action for ordinary negligence and failures in ordinary duties of care.**

116.   As Administrator, Steve Hudgens undertook duties of care to the residents at the facility.

43

117.   Administrator Defendant had a duty to administrate Premier Health and Rehabilitation, LLC in a manner that enabled it to use resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychological well-being of each resident.

118.   Based upon the state surveys of the facility and the assessments of Joyce Lee Vinson alleged in the above paragraphs, it was foreseeable to Administrator Defendant that harm would result to Joyce Lee Vinson if Administrator Defendant did not use ordinary care to administrate the facility in compliance with accepted professional and industry standards and principles that apply to professionals providing services in such facilities.

119.   Among the duties Administrator Defendant owed to Joyce Lee Vinson as the administrator of Premier Health and Rehabilitation, LLC, Administrator Defendant was obligated to use ordinary care to ensure that trained and qualified staff, in sufficient numbers, were available to provide Joyce Lee Vinson the care and attention reasonably required by her mental and physical condition, and to ensure that the orders and directions of Joyce Lee Vinson's attending physician and care plan were followed regarding her activities of daily living and ordinary caretaking.

120.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to ensure that trained and qualified staff, in sufficient numbers, were available to assist Joyce Lee Vinson with her activities of daily living, including the failure to assist with ambulating and transfers.

121.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to supervise nurses and nurses' aides and failed to

hire sufficient nurses and nurses' aides, and as such, the nurses and nurses' aides were unable to provide Joyce Lee Vinson the care she required.

122.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to adequately assess, evaluate, and supervise nursing personnel to ensure that Joyce Lee Vinson received appropriate nursing care.

123.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to adequately screen, evaluate, and test for competence in selecting personnel to work at the facility.

124.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to ensure that Joyce Lee Vinson attained and maintained her highest level of physical, mental, and psychosocial well-being.

125.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to ensure that Joyce Lee Vinson was provided proper supervision and intervention to prevent falls.

126.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to ensure that Joyce Lee Vinson received sufficient amounts of fluids to prevent dehydration, constipation and infections.

127.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to ensure that Joyce Lee Vinson received adequate nutrition to prevent malnutrition and weight loss.

128.    While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to provide a sanitary environment to ensure good hygiene and to prevent the development of infections.

129.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to ensure that Joyce Lee Vinson received nutrition, care, treatment, and medication as prescribed or in accordance with physician's orders;

130.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to ensure that Joyce Lee Vinson was treated with the dignity and respect that all nursing home residents are entitled to receive.

131.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to provide a safe environment for Joyce Lee Vinson.

132.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care at the facility.

133.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to ensure that Joyce Lee Vinson was timely turned and repositioned, or that she received prescribed medication and treatment to prevent the development or worsening of skin breakdown and pressure sores.

134.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to investigate the relevant facts, underlying deficiencies, or licensure violations or penalties found to exist at the facility by the Office of Long Term Care or any other authority.

135.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to establish the method and means for correcting deficiencies or licensure violations or penalties found to exist at the facility.

136. While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to determine whether the facility had sufficient numbers of personnel to meet the total needs of Joyce Lee Vinson.

137. While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to document, maintain files, investigate, and respond to any complaint regarding the quality of resident care, or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of said facility, an employee of the facility, or any interested person.

138. While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to ensure that Joyce Lee Vinson was provided with basic and necessary care and supervision.

139. While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to adequately hire, train, supervise and retain a sufficient amount of competent and qualified registered nurses, licensed vocational nurses, nurse assistants and other personnel in said facility to assure that Joyce Lee Vinson received care, treatment, and services in accordance with duties owed, and industry and community standards and practices.

140. While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to assign nursing personnel at the facility duties consistent with their education and experience based on Joyce Lee Vinson's medical history and condition, and her nursing and rehabilitative needs; the characteristics of the resident population residing in the area of the facility where Joyce Lee Vinson was a resident; and nursing skills needed to provide care to such resident population.

141.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to provide sufficient numbers of qualified personnel, to ensure that Joyce Lee Vinson was provided with a safe environment, received timely and accurate care assessments, received prescribed treatment, medication and diet, and was protected from abuse, mistreatment and accidental injuries by the correct use of reasonable safety measures.

142.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to properly in-service and orient employees to pertinent resident care needs to maintain the safety of residents.

143.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to protect Joyce Lee Vinson from abuse and neglect.

144.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of Joyce Lee Vinson.

145.   While Joyce Lee Vinson resided at Premier Health and Rehabilitation, LLC, Administrator Defendant failed to document and maintain all records on Joyce Lee Vinson in accordance with accepted professional standards and practice that were complete, accurately documented, readily accessible, and systematically organized with respect to her diagnosis, treatment, and appropriate care plans of care and treatment.

146.   The foregoing breaches of duties of ordinary care owed by the Administrator Defendant, in a natural and continuous sequence, were each a proximate

48

cause of the injuries incurred by Joyce Lee Vinson at Premier Health and Rehabilitation, LLC, and without which, the injuries would not have occurred.

147.   A reasonable nursing home administrator, operating under the same or similar circumstances as Administrator Defendant would not have breached the above-described duties of care.   It was reasonably foreseeable that the injuries described herein would result from the breaches of duties of care set out above.

148.   Due to the injuries proximately caused by Administrator Defendant, the Estate of Joyce Lee Vinson is entitled to be compensated by an amount of money which will reasonably and fairly compensate it for damages, which includes, but is not limited to, compensation for serious physical and emotional injuries, expenses for medical care, treatment and services, pain and suffering and mental anguish, disfigurement, disability, degradation, loss of personal dignity, loss of life and related expenses, in an amount to be determined by a jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which the Plaintiff is determined to be entitled by law.

## DEMAND FOR JURY TRIAL

149.   Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Cindy Clough, as Personal Representative of the Estate of Joyce Lee Vinson, deceased, and on behalf of the wrongful death beneficiaries of Joyce Lee Vinson, prays for judgment against Defendants as follows:

1.   For damages in an amount adequate to compensate Plaintiff for the injuries and damages sustained.

2.    For all general and special damages caused by the alleged conduct of Defendants.

3.    For punitive damages sufficient to punish Defendants for their egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences to Joyce Lee Vinson and her statutory beneficiaries and to deter Defendants and others from repeating such atrocities.

4.    For all other relief to which Plaintiff is entitled.

Respectfully submitted,

Cindy Clough, as Personal Representative of the Estate of Joyce Lee Vinson, deceased, and on behalf of the wrongful death beneficiaries of Joyce Lee Vinson

By:    _____
Melody H. Piazza (AR 86108)
Deborah T. Riordan  (AR 93231)
Wilkes & McHugh, P.A.
One Information Way, Suite 300
Little Rock, Arkansas  72202
Telephone:    (501) 371-9903
Facsimile:    (501) 371-9905

*Attorneys for Plaintiff*